Emily SHERIDAN, as Administratrix of the Estate of Robert R. Sheridan, and individually, and David W. Sheridan, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 81 CV 2858.

United States District Court, E. D. New York.

June 30, 1982.

Ferrara & Campriello, New York City by Austin V. Campriello, Anthony J. Ferrara, New York City, for plaintiffs.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y. by Reuben S. Koolyk, Miles M. Tepper, Asst. U. S. Attys., Brooklyn, N. Y., for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

This is an action brought by the parents of Robert R. Sheridan, individually and on behalf of his estate, under the Federal Torts Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–80. The gravamen of the complaint is that the United States Army negligently failed to timely and correctly inform plaintiffs that their son's death during Army service in Vietnam resulted from his prescribed use of a sulfa drug called Dapsone. The complaint alleges that by the time plaintiffs were apprised of the true cause of death the statute of limitations had expired on their cause of action against the manufacturer of Dapsone. Plaintiffs seek damages for the value of the time-barred claim.

The Government has moved for dismissal of the complaint, contending first that under the FTCA, no claim arising out of misrepresentation or deceit may be brought against the United States, 28 U.S.C. § 2680(h),[1] and second that because plaintiffs' claims arise out of circumstances incident to Robert Sheridan's military service, they are precluded under *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

Taking as true on the instant motion the allegations of the complaint, the material facts are as follows. In June 1969, while serving with the United States Army in Vietnam, Robert Sheridan died as a result of agranulocytosis. The Army immediately informed plaintiffs that agranulocytosis with septicemia was the cause of death and, in December 1969, advised that no evidence could be found of his having received a sulfa drug either during or prior to his illness. In fact, Army personnel had caused the decedent to take a sulfa drug called Dapsone prior to his death, and ingestion of Dapsone caused the fatal agranulocytosis. In 1970, Dr. Ognibene, a military physician in defendant's employ, knew that the use of Dapsone had caused the agranulocytosis which led to Sheridan's death. However, the Army failed to transmit the correct diagnosis to plaintiffs until July 1980. By letter dated July 10, 1980, Colonel George E. T. Stebbing, M.D., of the Department of the Army, informed plaintiffs that their son's agranulocytosis resulted from his use of Dapsone, which the Army had caused him to use.

At the time of the Army's notifications to plaintiffs in 1969, and at the time of Dr. Ognibene's knowledge of the cause of death in 1970, plaintiffs allegedly had a cause of action against the manufacturer of Dapsone. But in 1980, when they first received notice that their son had used Dapsone prior to his death, the complaint alleges that their cause of action against the manufacturer was time-barred.[2] On this basis, plaintiffs claim that the Army's original misinformation, as well as its subsequent failure to promptly correct the known inaccuracy, constituted negligence which caused plaintiffs to lose their claims against the manufacturer of the drug.

Under the clear authority of *United States v. Neustadt*, 366 U.S. 696, 702, 81 S.Ct. 1294, 1298, 6 L.Ed.2d 614 (1961), § 2680(h) excludes recovery under the FTCA upon claims arising out of negligent misrepresentation. In determining the applicability of the exclusion, "a court must

---

1. Section 2680 reads in part:

   "The provisions of this chapter and section 1346(b) of this title shall not apply to ...

   "(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

2. The Court expresses no opinion whether or how plaintiffs would be able to prove the damage element of their negligence claim, *i.e.*, that a cause of action existed against the manufacturer of Dapsone at the time of the Army's knowledge of the cause of decedent's agranulocytosis; that the statute of limitations had expired on such claim in every jurisdiction open to plaintiffs at the time of the Army's eventual disclosure; that the defendant manufacturer would have successfully asserted the statute of limitations as a defense; and finally, that the claim against the manufacturer has a value not wholly speculative.

look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir. 1976). In the circumstances evidenced by the pleadings, plaintiffs' argument that the instant claims arise out of negligence rather than misrepresentation "is nothing more than an attempt to circumvent § 2680(h) by denying that it applies to negligent misrepresentation." *United States v. Neustadt, supra*, 366 U.S. at 703, 81 S.Ct. at 1298.

In *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the malfunction of a United States Coast Guard lighthouse caused a tugboat to run aground. Recognizing the validity of petitioner's claim under the FTCA, the Supreme Court held:

> "The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act." *Id.* at 69, 76 S.Ct. at 126.

Subsequently, in *Neustadt*, the Court addressed the relative bounds of the *Indian Towing* doctrine and the misrepresentation exception. Plaintiffs there had purchased a house, relying on an inaccurate appraisal by the Federal Housing Authority (FHA). The Supreme Court rejected the Fourth Circuit's analysis that the cause of action arose out of the FHA's negligence:

> "To say, as the Fourth Circuit did, that a claim arises out of 'negligence,' rather than 'misrepresentation,' when the loss suffered by the injured party is caused by the breach of a 'specific duty' owed by the Government to him, i.e., the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation.'" 366 U.S. at 706, 81 S.Ct. at 1300.

See also, *id.* at 711, n.26, 81 S.Ct. at 1302, n.26.

The pivotal decision in the Second Circuit is *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967). The defendant airline sought indemnification from the United States for injuries caused by a plane crash allegedly resulting from the failure of the Air Traffic Controllers and the United States Weather Bureau to accurately report weather information. Recognizing that certain kinds of negligence involve an element of misrepresentation yet remain actionable under the FTCA, the Court of Appeals concluded that the air controller's conduct bore close resemblance to that of the Coast Guard in *Indian Towing* and that the commercial context in *Neustadt* involved distinguishable circumstances. *Ingham* establishes the following analytical principle: "Where the gravamen of the complaint is the negligent performance of operational tasks, rather than misrepresentation, the government may not rely upon § 2680(h) to absolve itself of liability." 373 F.2d at 239.

■ However artfully pleaded, the gravamen of the instant complaint is that the Government's breach of its duty to act with care when it provides information to parents of deceased servicemen, *i.e.*, its negligent misrepresentation, caused plaintiffs' economic injury.[3] It is long established law

---

**3.** Paragraphs 22 and 34 of the complaint herein allege as follows:

> "As a result of the defendant's conduct Emily and David Sheridan have been dam-

aged in the amount of $10,000,000, representing the value of their time-barred claim against the manufacturer of the drug Dapsone for Robert R. Sheridan's death, con-

in New York and other States that negligent misrepresentation is actionable where a duty to provide correct information arises out of the relationship of the parties. *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931); *International Products Co. v. Erie R. Co.*, 244 N.Y. 331, 155 N.E. 662 (1927). As stated by the New York Court of Appeals:

> "Liability in such cases arises only where there is a duty, if one speaks at all, to give the correct information. And that involves many considerations. There must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care."

*International Products Co. v. Erie R. Co., supra*, at 338, 155 N.E. at 664.

Similarly, the American Law Institute's Restatement (Second) of Torts § 552(3) recognizes that liability for negligent misrepresentation arises where information is negligently supplied by one under a "public duty" to provide the information:

> "(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."

The Supreme Court has ruled that whether a "claim is outside the intended scope of the [FTCA] . . . depends solely upon what Congress meant by the language it used in § 2680(h)," and it has determined that Congress intended to adopt "the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation.'" *United States v. Neustadt, supra*, 366 U.S. at 706–07, 81 S.Ct. at 1300–01. Therefore, it appears that we must look to generally accepted principles relating to negligent misrepresentation in order to determine the applicability of the exclusion provision to the instant claims.

Since the complaint herein pleads the elements of a cause of action for negligent misrepresentation as set forth in *International Products Co.* and Restatement (Second) of Torts § 552(3), plaintiffs cannot be heard to argue that their claims do not arise out of misrepresentation. To permit plaintiffs "to recover by 'dressing up the substance' of [misrepresentation] in the 'garments' of negligence would be to 'judicially admit at the back door that which has been legislatively turned away at the front door.'" *Lambertson v. United States, supra*, 528 F.2d at 445, quoting from *Laird v. Nelms*, 406 U.S. 797, 802, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499 (1972).

The Court of Appeals' recent decision in *Kohn v. United States*, 680 F.2d 922 (2d Cir. 1982), is instructive. Plaintiffs there, parents of a serviceman shot to death by a fellow soldier, brought suit as administrators of their son's estate and in their own right. The third cause of action sought monetary recovery for emotional distress allegedly inflicted on plaintiffs by the Army's suppression of information and release of fraudulent information subsequent to their son's death. Reversing the district court's dismissal of the complaint for lack of subject matter jurisdiction, the Court of

scious pain and suffering, loss of their son's support and services, their own pain and suffering and grief and the value of their son's life to them." (Except that ¶ 34 omits the word "own".)
It is clear that the allegation of "[plaintiffs'] pain and suffering and grief" refers not to a direct claim against the United States, but to an element of the "time-barred claim" against the drug manufacturer. This conclusion follows from the fact that every other alleged injury in these paragraphs is actionable only against the manufacturer and not the Government. Thus, the present action seeks damages for a single harm: the loss of a purely financial interest in a products liability claim. Nevertheless, plaintiffs are free to amend the pleading to state a valid claim under the principles articulated in *Kohn v. United States*, 680 F.2d 922 (2d Cir. 1982).

Appeals held as follows with respect to the misrepresentation exception in § 2680(h):

"The government contends that appellants' claims of direct injury to themselves are nevertheless barred because they constitute an action for misrepresentation or deceit, as to which the government has not waived immunity, 28 U.S.C. § 2680(h).... Although the misrepresentation and deceit exceptions encompass both negligent and willful failure to provide accurate information, *United States v. Neustadt*, 366 U.S. 696, 702 [81 S.Ct. 1294, 1298, 6 L.Ed.2d 614] (1961), these exceptions have generally been applied only to actions for damages due to commercial decisions that were predicated on incorrect or incomplete information. Id. at 711 n.26 [81 S.Ct. at 1302 n.26]; *Green v. United States*, 629 F.2d 581, 583–85 (9th Cir. 1980). Because the context here is hardly commercial in nature, we do not believe that appellants' claims are necessarily barred as an action for misrepresentation or deceit." *Id.*, 680 F.2d at 926.

 Following the guidance provided by *Kohn*, the instant complaint must be dismissed. While the present plaintiffs do not complain of misrepresentative "business dealings" with the Government, see *United States v. Neustadt, supra*, 366 U.S. at 711, n.26, 81 S.Ct. at 1302, n.26, it is clear that they seek damages for loss of an economic or financial interest, namely, the right to sue the manufacturer of Dapsone. Their reliance on the Government's misinformation in the conduct of their financial affairs falls within the sphere of claims expressly recognized in *Kohn* as proscribed by § 2680(h). Upholding a claim limited to emotional harm, the Court of Appeals in *Kohn* nevertheless indicated that § 2680(h) excludes FTCA claims based on misrepresentation or nondisclosure which affect a purely financial decision.

Accordingly, the Court concludes that § 2680(h) bars plaintiffs' claims of injury to their financial interest.[4] Since the United States has not consented to suit, the action is hereby dismissed for lack of subject matter jurisdiction, see *Lambertson v. United States, supra*, 528 F.2d at 443, rendering unnecessary consideration of the further grounds asserted in support of the instant motion.

SO ORDERED.

---

**4.** Plaintiffs' claim predicated on the Army's failure to promptly correct the initial misrepresentation, Complaint ¶¶ 23–34, is also precluded by § 2680(h), because it relies upon the same relationship and duty as the primary claim. In the words of the statute, plaintiffs' third and fourth claims for relief constitute "claim[s] arising out of ... misrepresentation," and are therefore subject to the statutory exclusion.